**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**SANTONIO SIMMONS,**

      **Petitioner,**

**v.**                                          **Case No. 8:05-cv-2318-T-23TBM**

**UNITED STATES OF AMERICA,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on Petitioner's **Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 1) and the government's response in opposition (Doc. 8).[1] By his motion, the Petitioner urges he was denied the effective assistance of counsel before this court by reason of counsel's failure to file a notice of appeal after he specifically requested that counsel do so. In response, the Government acknowledges that an evidentiary hearing is necessary. The evidentiary hearing was conducted October 20, 2008.

I.

---

[1] Petitioner's motion was supplemented by a memorandum (Doc. 2) and supplemental memorandum (Doc. 9)

A.

A brief description of the pertinent procedural history on the underlying criminal case may be useful.[2] On September 17, 2003, Antonio Simmons ("Mr. Simmons," "Defendant," or "Petitioner"), Kareen Desseau, Delvaughn Johnson, and Michael Porter were indicted in a five-count Indictment. Mr. Simmons was appointed counsel pursuant to the CJA on November 25, 2003. The following day, Craig Epifanio, Esquire, entered his notice of appearance on Mr. Simmons's behalf. A two-count Superseding Indictment was returned on April 29, 2004, accusing Petitioner and Delvaughn Johnson in Count One of violation of 18 U.S.C. § 111(a)(1) and (b), and 2, for the attempted robbery/assault of an undercover deputy during a drug deal, and in Count Two, violation of 18 U.S.C. § 924(c), for the possession of a firearm in furtherance of the assault alleged in Count One. (Doc. 67). Simmons was arraigned on that Indictment on November 25, 2003, and entered a not guilty plea. On June 21, 2004, the Defendant appeared before the undersigned magistrate judge and entered guilty pleas to both counts. (Doc. 81). The pleas were entered pursuant to a written plea agreement (Doc. 76). A pre-sentence report was directed and the pleas were thereafter accepted on July 14, 2004. (Doc. 90).

Sentencing was continued twice at the request of the government. (Docs. 118, 149). On November 10, 2004, counsel for Mr. Simmons filed his sentencing memorandum. (Doc. 148). On December 16, 2004, the government filed a motion for upward departure pursuant to guideline § 2K2.4. In pertinent part, the government argued that Mr. Simmons should be

---

[2] See Case No. 8:03-cr-393-T-23TBM.

scored as a career offender under §§ 4B1.1 and 4A1.2 of the guidelines, and if not, then sentenced to an upward departure on Count Two based on his extensive criminal history. On December 17, 2004, Mr. Simmons was sentenced to 37 months for Count One and a consecutive term of 180 months for Count Two, followed by five years of supervised release.

The transcript of the sentencing proceeding reflects the court sided with the Petitioner on the government's argument that he should be scored as a career offender and enhanced for his obstruction of justice. The court granted the government's request for an upward departure on Count Two. *See* (Doc. 185 at 18-19, 31, and 67). After pronouncing sentence, the court indicated to the Defendant

> Mr. Simmons, in your plea agreement you have largely waived your right to appeal from this judgment unless I have visited upon you an unlawful sentence or one departing from the sentencing guidelines, which in point of fact I - - I don't think I have. So you have ten days in which to appeal.
>
> Any notice of appeal must be filed in writing with the Clerk of this court accompanied by a filing fee, within ten days. Failure to file that notice within ten days constitutes a waiver of your right to appeal. (Doc. 185 at 74-75).

The court also advised the Petitioner that his counsel, Mr. Epifanio, would be required to preserve his appellate interests until other counsel was appointed. *Id.*

No notice of appeal was filed.

A year later on December 19, 2005, the Defendant timely filed his motion to vacate sentence (Doc. 181) and thereafter all proceedings were transferred to the above styled case. On June 30, 2008, the court denied the motion as to claims two and three and directed an evidentiary hearing on the first claim, alleging ineffective assistance of counsel for the failure to file an appeal. (Doc. 10).

3

B.

Petitioner, his father, and former counsel (Mr. Epifanio) testified at the hearing on October 20, 2008. A summary of their respective testimony follows. Simmons testified he was sentenced on December 17, 2004. By his account, prior to sentencing he had no discussion with his attorney about an appeal. The first discussion with his attorney regarding an appeal occurred after sentencing, either on the night of the sentencing or the next night, at the Orient Road jail where Petitioner was being detained. According to the Petitioner, Mr. Epifanio indicated he was upset with the sentence because of the upward departure and he indicated that the government had retaliated against Petitioner because of his testimony in another case. Petitioner claims that he clearly expressed to counsel his desire to take an appeal. Mr. Epifanio told him that he caught a break from the court on sentencing because he could have been sentenced as a career offender. Mr. Epifanio also advised him that in his view, it was not a good move to take an appeal. By Petitioner's account, Mr. Epifanio presented him with a paper to sign which stated that he did not wish to appeal. Petitioner refused to sign the same telling counsel that he wanted counsel to appeal. Mr. Epifanio advised that he would give him time to think about it. Shortly thereafter, Petitioner was moved from the Orient Road jail and he called his attorney and again told him he wanted an appeal. Later (at some unspecified time), he also spoke with counsel's secretary who advised that no appeal had been taken. According to the Petitioner, he had his girlfriend, Tracy, attempt to speak with counsel about an appeal as well.

Petitioner introduced an August 10, 2005, letter to his attorney. *See* (Ex. D-1). By this letter, he requested his files and asked "why didn't you file a Notice of Appeal as requested by me on my behalf." *Id.*

On cross-examination, Mr. Simmons acknowledged that prior to sentencing he had gone over the presentence report ("PSR") with counsel and knew of the recommended guideline disposition in the first PSR calculation of 360 months as a career offender. Mr. Simmons also acknowledged that on his sentencing date, his attorney prevailed on the issue of his career offender status and on the enhancement for obstruction of justice argument made by the government. Petitioner testified that he went into sentencing expecting a sentence at the low end of the guideline range, 51 to 71 months with a consecutive 7 years on the firearm charge. He claimed that he didn't know he could score out to twenty years despite the information given him by the court at his plea hearing. Petitioner reiterated that he told his attorney to appeal either the night of the sentencing or the next night. He and his attorney were both dissatisfied with the sentence. Petitioner acknowledged that his counsel advised he could have been scored as a career offender and if he appealed the government might cross-appeal which could result in him later receiving a higher sentence.

Petitioner's exhibit D-2 was introduced. This is an August 12, 2005, response by Mr. Epifanio, transmitting the "PSI, Plea Agreement, and all applicable discovery for your case" and counsel's response to the inquiry about not filing an appeal. *See Id.* On cross-examination, Petitioner disputed that he agreed not to take an appeal as the letter suggests. He expressed his view that the government breached the plea agreement. Petitioner testified that he had hoped the government would file a motion for a reduction of his sentence

5

because of his cooperation in turning over some information he learned while incarcerated, but that did not occur.[3]

Petitioner's father, John Simmons, testified that he was present at the sentencing. At the conclusion of sentencing, he, his wife, his son John, Jr., and Mr. Epifanio rode in the elevator. Mr. John Simmons testified that he asked counsel what counsel was going to do, and Mr. Epifanio responded that he was going to appeal.

Craig Epifanio testified that he is an attorney specializing in criminal law with eleven years experience. He is a member of the Middle District of Florida bar and is on the court's CJA Panel. He has handled approximately twenty cases under a CJA appointment. Ultimately, Defendant was charged with a robbery and a Section 924(c) gun charge, but no drug charges. He testified that there were several unresolved issues raised at sentencing, namely "5K issues," his status as a career offender, obstruction of justice, and acceptance of responsibility. He remembers that Petitioner prevailed on the career offender and obstruction of justice issues. When the government lost on the career offender argument, it requested the court depart upward pursuant to 2K2.4 and specifically requested a twenty-year sentence on the basis of Petitioner's prior record. As it turned out, the court imposed a fifteen year term on that gun charge.

Mr. Epifanio could not recall speaking with the Petitioner in court after the sentencing, although he recalled speaking with the family and indicating that he would talk to

---

[3] In the government's view, the matter of the Petitioner not getting substantial assistance from the government is relevant to the matter of the Defendant's timing in forwarding his letter to the attorney and bringing this ineffective assistance claim.

the Petitioner about an appeal. According to his notes, Mr. Epifanio next spoke with the Petitioner on December 21, 2004 (four days after sentencing), at the jail, where they discussed an appeal. He could not recall if the Petitioner had called him prior to that date. By his account, this was an extensive conversation. He expressed to Petitioner his view that the government would not be happy if an appeal was taken and would likely cross-appeal. He believed that the government was not happy about the way Petitioner had testified for Delvaughn Johnson. Also, Petitioner's plea agreement had a waiver of appeal provision which would limit his appeal rights and the judge had suggested that he didn't think Petitioner could appeal. Counsel thus advised Petitioner that while he could appeal, counsel did not think it was a good idea.

By Mr. Epifanio's account, the Petitioner was "not happy" with his advice, but ultimately the Petitioner indicated that he did not wish to appeal. Counsel denies that he provided the Petitioner with a written document waiving his right to appeal, although he has done so in other cases. By counsel's account, he received a couple of phone calls from the Petitioner before he was shipped out and the Petitioner never changed his mind about not appealing. His girlfriend, Tracy, called "a lot" for several months after sentencing. The matter of an appeal did not come up until a couple of months later. Mostly, the conversations were about a Rule 35 motion. In his view, Petitioner had information about a murder suspect that might help him. In about March 2005, he attempted to get an agent involved in this. At some subsequent point, the government indicated the Petitioner would not receive the benefit a Rule 35 motion in light of his testimony (for Johnson). Counsel did not recall telling

Petitioner about this, but he may have told Tracy, Petitioner's girlfriend. Mr. Epifanio denies telling either Petitioner or Tracy that he would file an appeal.

On cross-examination, Mr. Epifanio acknowledged that his statement in the August 12, 2005, letter indicating that the government might appeal the denial of an upward departure was inaccurate as there had been an upward departure. He also admitted that the last sentence of the first paragraph inaccurately states that had the judge upwardly departed there would have been an issue for appeal. The statement is inaccurate because the sentence on the gun charge was an upward departure. His suggestion in the second paragraph that there was no issue for appeal was also incorrect. Counsel also acknowledged the exception in the waiver provision of the plea agreement that would permit an appeal and agreed that Petitioner could have appealed the ninety-six month upward departure on the firearm count. He also agreed the letter was confusing and he should have better chosen his words.[4]

Counsel reiterated that he usually tried to get a written waiver of appeal, but here he did not have one. He acknowledged that Petitioner's girlfriend, Tracy, called a lot and, at some point a couple of months later, she asked if there was going to be an appeal. In response, he told her there was no appeal and he explained why.

By Mr. Epifanio's account, Petitioner's first request for an appeal was as referenced in Petitioner's August 2005 letter (Ex. D-1), which was forwarded eight months after sentencing.

---

[4] Counsel testified that when he used "upward departure" in the letter, he was thinking of the departure upward based on the career offender argument, which was the focus of his concern and his discussions with Petitioner.

8

On redirect, counsel attempted to explain that his use of the term upward departure referred to the possibility of career offender sentencing.

When questioned by the court, counsel acknowledged that his August 12, 2005, letter nowhere reflects that the Petitioner said he did not wish to appeal. When pressed by the court on whether his file contains any documentation of the fact that his client said he did not wish to appeal, counsel produced a chronological summary containing an entry on December 22, 2005, where he advised the Petitioner of his concerns about taking an appeal in these circumstances and the Petitioner agreed to go along with his recommendation to not appeal. The notation also states that the Petitioner never asked him to appeal. *See* Court Exh 1, entry dated "Dec 22  04  -  1:26PM." Counsel testified that he remembers telling the Petitioner that he had a right to appeal the fifteen-year sentence on the gun count, but that the Petitioner agreed that they should not appeal based on his recommendation.[5] On re-cross Petitioner's counsel questioned Mr. Epifanio about the apparent confusion in his contemporaneous entry. Counsel insisted that in his discussions with Petitioner, the matter came down to the possibility of the government appealing the career offender issue. Counsel insisted that he had told Petitioner that he could appeal but that it was risky.

II.

---

[5]According to counsel, Petitioner said something to the effect that "I guess we shouldn't appeal."

Mr. Simmons claims that his defense counsel rendered ineffective assistance by failing to file a notice of appeal. To prove his claim, Petitioner must meet the test established in Strickland v. Washington, 466 U.S. 668 (1984), a test the circuit court describes as follows:

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). Strickland's two-prong test governs claims that counsel was ineffective for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470,476-77 (2000) ("Today we hold that [the Strickland] test applies to claims, like respondent's, that counsel was constitutionally ineffective for failing to file a notice of appeal."); Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) ("In order to prevail on his claim that counsel was constitutionally ineffective for failing to file an appeal, Thompson must show that counsel's performance was deficient and that this deficiency prejudiced him.").

As for the first prong of the Strickland test, the Court in Flores-Ortega addressed the standards applicable to three distinct situations involving counsel's alleged failure to protect the client's appellate rights: (1) where counsel fails to file an appeal even though the defendant unquestionably expresses his desire to appeal,[6] (2) where the defendant faults

---

[6] Flores-Ortega, 528 U.S. at 477 ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable . . . . [A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.") (citations omitted).

counsel for not appealing even though the defendant stated that he did not want an appeal,[7] and (3) where the defendant's desire to appeal is not clearly expressed one way or another. After careful consideration of the facts presented at the evidentiary hearing, I conclude that the case falls within the second scenario and, as a consequence, Petitioner fails the first prong of the Strickland test.

Petitioner does not claim that counsel failed to consult with him about appealing. To the contrary, he contends that, either the evening following the sentencing or the next night, counsel met with him at the jail to discuss an appeal. By counsel's recollection, the meeting was a few days later but in any event, there was an extensive discussion about the merits of an appeal. By Petitioner's account, Mr. Epifanio did not want him to appeal and sought to have him sign a waiver of appeal, but he unequivocally told Mr. Epifanio to file an appeal. In contrast, counsel testified that after explaining why he thought an appeal was unwise, Petitioner agreed to go along with counsel's recommendation to not appeal. According to counsel, neither Petitioner nor his girlfriend thereafter told him to appeal and the first time an appeal was mentioned again was in Petitioner's August 2005 letter. In the end, the issue turns on credibility.

I am troubled both by the confusion demonstrated in Mr. Epifanio's August 2005 letter over whether Mr. Simmons had any appealable issues and the possibility that the Petitioner could also have been confused, even misled, had counsel presented the matter to

---

[7] Flores-Ortega, 528 U.S. at 477 ("At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

11

him the same way shortly after his sentencing.[8] Nevertheless, I am left persuaded that counsel did advise Petitioner that he could appeal and their discussion involved the benefits and risks of an appeal in the given circumstances. In the end, Petitioner agreed to follow counsel's advice not to appeal because of the possibility of a cross-appeal by the government and the potential that he could lose on the career offender argument. Thus, while it is most probable that Petitioner, at first, desired to appeal the fifteen-year sentence on the gun charge, he was persuaded otherwise because of the risk to him that if he appealed he could ultimately come out worse off. For me, the decisive evidence is found in Mr. Epifanio's contemporaneously prepared notes. *See* Court Exh. 1. By his notes from December 20 and 22, 2004, counsel intended to and did advise Petitioner that he should not appeal. Counsel's entry from December 22, 2004, states,

> I did follow up with client yesterday and explained the risks of appealing
> despite his right to appeal. I explained that if he appealed the government
> has the right to appeal the judge's denial of the career offender status
> and thus possibly increase his sentence. I also reiterated that he waived
> his right to appeal in the plea agreement so unless there is a legitimate issue,
> it may be moot to appeal. He said he wasn't happy with the outcome
> but would go with my advice. I also told him of potential or Rule 35 in
> future and to possibly try that later on. He never asked me to appeal
> so I will wait on payment to close.

---

[8] Petitioner does not here complain about the quality of the advice given by counsel concerning an appeal, only that his attorney declined to take an appeal after being requested to do so. Despite counsel's confusion on the matter, it appears that Petitioner could have appealed the 180-month sentence on Count Two consistent with the appeal waiver in his plea agreement. As the government noted in its response, "[T]he sentencing guidelines specified that the guidelines sentence for count two was 'the minimum term of imprisonment required by statute[,]' which, in Simmons's case, was seven years. USSG § 2K2.4(b); . . . . Any sentence above the guideline sentence was an 'upward departure.' USSG §2K2.4, comment. (N.2(B))." Counsel recognized that this was an upward departure within an exception to the waiver provision in the plea agreement and, as stated above, I find that Petitioner was told he could take an appeal.

12

Thus, the risks of appealing despite his right to appeal were explained to Petitioner. While Petitioner "wasn't happy with the outcome" he decided to go along "with [counsel's] advice." In the end, Mr. Simmons "never asked me to appeal. . . ." *Id.*

I find that counsel's testimony, as supported by the contemporaneous notes, is more credible than Petitioner's testimony. Because I find that Mr. Simmons agreed to not pursue an appeal, counsel's failure to file a notice of appeal was not deficient performance within the meaning of Strickland. Where Petitioner fails to show deficient performance, whether prejudice ensued is inconsequential. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").

### III.

Accordingly, it is RECOMMENDED that the court **DENY** Petitioner's **Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** (Doc. 1).

                                         Respectfully submitted on this
                                         25th day of November 2008.

                                         THOMAS B. McCOUN III
                                         UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies to:
United States District Judge
Counsel of Record
Former Counsel